No. 19,337.

PAUL McCOMAS, by his Next Friend, etc., *Appellant*, v. THE STRASBURGER DRY GOODS COMPANY, *Appellee*.

### SYLLABUS BY THE COURT.

COLLISION—*Automobile and Bicycle—Question of Negligence was for the Jury.* The evidence on behalf of plaintiff, tending to show negligence and failing to establish contributory negligence, should have been submitted to the jury, and it was error to sustain a demurrer to such evidence.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed November 6, 1915. Reversed.

*John Madden,* and *C. E. Cooper,* both of Parsons, for the appellant.

*W. S. Hyatt, E. L. Burton,* and *George F. Burton,* all of Parsons, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued for damages for an injury alleged to have been caused by the defendant in running upon him with an auto delivery wagon. A demurrer to the plaintiff's evidence was sustained and this is assigned as the principal error, the question for consideration being whether or not there was sufficient evidence to go to the jury, the defendant claiming that while there was no evidence of negligence there was testimony clearly showing contributory negligence.

The plaintiff was riding a bicycle easterwardly and was turning south across the street-car tracks to get on the proper side of the street when he was run into by the defendant's auto car which, coming westwardly, was moving to the south side of the street. A street car approaching from the west was stopped near the place of the collision. One of the employees of the company testified:

"The boy was going in a southeasterly direction. I saw the auto as it approached the bicycle. The automobile looked to me like it was going to turn across the track and the bicycle seemed as though it was going on the south side in front of the car and in front of the automobile, that it kept turning out. At that time they were probably 6 feet apart. Our car was west of them. We had come to a stop. We did not stop, until they hit. At the time they hit they were about on the north rail of the railroad. The automobile was n't quite up to the north rail and the boy about the center of the track. That is my recollection. The boy was heading, at that time, in a south-easterly direction. The car was just about to his side. The auto driver did not stop until he hit. I never heard a horn or a signal from the auto. As they got closer the boy was pumping the bicycle. He was apparently putting all his weight on the front pedal. They went a little further and hit or met. The boy was not facing the auto delivery after they begun to turn. It looked to me like the automobile hit the bicycle. Up to that time I did not hear any signal from the automobile. The automobile hit the bicycle on the pedal or just behind it on the left side. Then the bicycle kind of tipped over and the boy threw his foot out to catch himself. The auto car had not stopped at that time. The boy fell over on one foot and it bumped him again; struck the bicycle about the same place. The boy fell down and the auto run up on the boy's foot, stopped, and backed off. Up to that time I had never heard any signal or horn sounded. The auto did not stop until it got on the boy's foot. I have had some experience in operating automobiles. . . . It was running, I think, about 4 or 5 miles an hour and could have stopped in from 3 to 5 feet. The boy was about 45 or 50 feet from the car when I first saw it."

Another employee of the car company testified:

"When I saw the boy, they were both going across the north rail. The motor car was pushing the bicycle. Pushing him from or back across the rail. I never heard any horn or signal given. I was about forty feet from them at the time. The motor car struck the bicycle about the time I saw them. When the motor hit the bicycle it looked to me like it struck the back of it. It did n't look like the motor car slowed up any. When the auto hit the bicycle it knocked the boy over to one side. It looked like the boy was trying to catch himself, then he was knocked down. During the time until the boy was knocked down, it looked like the driver was trying to stop the motor car, I don't know. When the boy went down the car stopped after it got across the track. I could n't say what part of the bicycle was struck. When the boy went down I saw it go to one side. The boy fell to the pavement. The motor car run up on his leg. It backed off, just rolled back. I saw a couple of men pick the boy up and carry him into the garage. . . . When the car was pushing the boy, he was trying to catch himself; it looked that way to me. He was finally knocked down. I think the car pushed the boy 7 or 8 feet."

Plaintiff himself testified:

"When I started diagonally across the street the Strasburger delivery wagon was standing still in front of the Peerless Machine Works, headed west. I did not know in what direction it was going to move, but knew it was headed west. When I started diagonally across the street, I could see the interurban baggage car coming from the west about a block back. That would give me plenty of time to cross their tracks. The next time I saw the Strasburger automobile, after I saw it at the Peerless Machine Shops, it was right upon me. It knocked me down, pushed me along, and the hub of the right-hand front wheel of the machine caught in the rear wheel of my bicycle, threw me down and the car ran up on my right leg. There was no horn sounded or signal given. In trying to get out of the way, I turned directly south and pumped as hard as I could. It struck first on the side of the bicycle behind the left pedal. Then I tried to get out of its way. There was no other direction, except going south, and I turned that way to get out of the way. When it first struck it did not stop or slow up, and kept shoving me and pushing, until it knocked me down and run up on my leg, and then stopped. The automobile struck my bicycle twice. The second time it struck the hind wheel. I was then thrown to the curb on the south side, the auomobile run on my right leg, the car backed again and two fellows from the Peerless Machine Shop carried me in and set me down on a chair to see the extent of my injuries."

The foregoing quotations are taken from the counter-abstract alone, and, regardless of all the other evidence submitted,

appear to justify and require a submission of the case to the jury on the question of negligence, and we find nothing in the record conclusively showing contributory negligence.

The order of the trial court is reversed and the cause remanded for further proceedings in accordance herewith.